---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

SCOMA CHIROPRACTIC, P.A., a Florida corporation, FLORENCE
MUSSAT M.D., S.C., an Illinois service corporation, and WLLIAM P.
GRESS, an Illinois resident, individually and as the representatives
of a class of similarly situated persons,

*Plaintiffs-Respondents,*

v.

MASTERCARD INTERNATIONAL INCORPORATED,

*Defendant-Petitioner.*

---

Petition for Permission to Appeal from an Order of the U.S. District
Court for the Middle District of Florida, Case No. 2:16-cv-41-JLB-MRM

---

## PLAINTIFFS-RESPONDENTS' ANSWER TO
## DEFENDANT'S RULE 23(f) PETITION FOR PERMISSION TO APPEAL
## FROM AN ORDER ON CLASS CERTIFICATION

---

Glenn L. Hara
Ross M. Good
Anderson + Wanca
3701 Algonquin Road
Suite 500
Rolling Meadows, Illinois 60008
Telephone: 847-368-1500
Facsimile: 847-368-1501
*Attorneys for Plaintiffs-Respondents*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Scoma Chiropractic, P.A., Florence Mussat M.D., S.C., and William P. Gress provide the following Certificate of Interested Persons and Corporate Disclosure Statement:

<u>Corporate Disclosure</u>:

Plaintiff-Respondent, Scoma Chiropractic, states that it has no parent corporations, and no publicly held corporation owns 10% or more of its stock.

<u>Interested Persons</u>:

1. Anderson + Wanca

2. Barrow, Carla M. Clyne, Reginald John

3. Badalamenti, John L.

4. Clyne, Reginald John

5. Cofino, Michelle Diaz

6. Corrigan, Timothy J.

7. Dental Equities, LLC

8. Dudek, Kyle

9. Dorsey & Whitney, LLP

10. Edelman, Combs, Latturner & Goodwin, LLC

11.    Edelman, Daniel A.

12.    Eusebio, Lissette

13.    Eversheds Sutherland (US) LLP

14.    Foxall, Roy W.

15.    Good, Ross M.

16.    Gress, William P.

17.    Hara, Glenn L.

18.    Henderson Franklin Starnes & Holt, P.A.

19.    Karagheuzoff, Christopher G.

20.    Kelly, Ryan M.

21.    Kolbus, Heather A.

22.    Law Office of Roy W. Foxall, PA

23.    Mastercard International Incorporated

24.    Mastercard Incorporated (NYSE stock symbol "MA")

25.    McCoy, Mac R.

26.    Montcalm, Johathan

27.    Mussat, Florence M.D., S.C.

28.    Peer Equities, LLC

29.    Quintairos, Prieto, Wood & Boyer, PA

30.    Shahmohammadi, Kianor Dr.

31.   Scoma Chiropractic, P.A.

32.   Wanca, Brian J.

33.   Warner, Curtis Charles

# <u>TABLE OF CONTENTS</u>

Certificate of Interested Persons & Corporate Disclosure Statement

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... iii

Introduction ........................................................................................................ 1

Factual and Procedural Background ................................................................... 2

      A.      The junk-fax campaign for the Doctors Club Mastercard giving

              rise to this case ................................................................................. 2

      B.      Mastercard's defense that it is not the "Sender" of the faxes ............. 5

      C.      The district court's order certifying the Stand-Alone Fax Machine

              Class ................................................................................................. 5

Argument............................................................................................................ 10

I.       Standards for obtaining interlocutory review of class certification ............. 10

II.      Mastercard fails to meet the standards for immediate Rule 23(f) review .... 11

      A.      Mastercard fails to establish the "death knell" factor ........................ 11

      B.      Mastercard fails to demonstrate any "substantial weakness" in

              the district court's decision, such that it "likely constitutes an

              abuse of discretion." ......................................................................... 14

      C.      Mastercard presents no novel or unsettled legal issue important

              to class actions in general ................................................................. 17

D.     The nature and status of the litigation before the district court
supports denial of the petition. ........................................................... 18

E.     Likely "future events" do not support an interlocutory appeal .......... 20

Conclusion ............................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*,

   2021 WL 3043422 (N.D. Ill. Feb. 17, 2021) ..........................................................6

*Chapman v. Wagener Equities Inc.*,

   747 F.3d 489 (7th Cir. 2014)................................................... 11, 13–14

*Cherry v. Dometic Corp.*,

   986 F.3d 1296 (11th Cir. 2021)....................................... 1, 5, 8–9, 15–18

*Chicago Car Care Inc. v. A.R.R. Enter., Inc.*,

   2021 WL 1172262 (N.D. Ill. Mar. 29, 2021)......................................9

*In re Delta Air Lines*,

   310 F.3d 953 (6th Cir. 2002)................................................................14

*Lyngaas v. Curaden AG*,

   992 F.3d 412 (6th Cir. 2021)..................................................................6

*Ocwen Loan Servicing, LLC v. Belcher*,

   No. 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018).................................1

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,

   781 F.3d 1245 (11th Cir. 2015)..............................................................8

*Prado-Steiman ex rel Prado. v. Bush*,

   221 F.3d 1266 (11th Cir. 2000)................................................... *passim*

*Reyes v. BCA Fin. Servs., Inc.*,

    2018 WL 3145807 (S.D. Fla. June 26, 2018) ......................................................9

*Scoma Chiropractic, P.A. v. Dental Equities, LLC*,

    232 F. Supp. 3d 1201 (M.D. Fla. 2017)........................................................5, 15

*Shin v. Cobb Cnty. Bd. of Educ.*,

    248 F.3d 1061 (11th Cir. 2001).......................................................... 1, 10, 19–20

*Waste Mgmt. Holdings, Inc. v. Mowbray*,

    208 F.3d 288 (1st Cir. 2000) ...............................................................14

## Statutes

47 U.S.C. § 227(a)(3)...........................................................................6

47 U.S.C. § 227(b)(1)(C) ..................................................................4, 15

47 U.S.C. § 227(b)(3)...........................................................................14

## Rules & Regulations

Fed. R. Civ. P. 23(a).......................................................................... 14, 18

Fed. R. Civ. P. 23(b)(3)....................................................................... 15, 17–18

Fed. R. Civ. P. 23(f) ...........................................................................1,11

47 C.F.R. § 64.1200(f)(11) .....................................................................5

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

    18 FCC Rcd. 14014 (July 3, 2003) ...................................................... 6

*In re WestFax, Inc. Petition*,

   30 FCC Rcd. 8620 (Aug. 28, 2015) ...........................................................6

*In re Amerifactors Fin. Group, LLC Petition*,

   2019 WL 6712128 (CGAB Dec. 9, 2019) ........................................6–7

## Introduction

Plaintiffs, Scoma Chiropractic, P.A., Florence Mussat, M.D., S.C., and Dr. William P. Gress, state as follows in response to the Petition for Permission to Appeal pursuant to Fed. R. Civ. P. 23(f) filed by Mastercard International Inc. ("Mastercard") from the district court's order granting class certification of the "Stand-Alone Fax Machine Class" and denying certification of the "All Fax Recipients Class" and the "Online Fax Services Class."

As argued below, Mastercard's petition does not satisfy any of the factors for interlocutory appeal of a class-certification order identified by this Court in *Prado-Steiman ex rel Prado. v. Bush*, 221 F.3d 1266, 1274–76 (11th Cir. 2000), including the most important "death-knell" factor. The district court (Badalamenti, J.) carefully considered the controlling authorities, including *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021), and made a reasoned decision to certify the Stand-Alone Fax Machine Class that was in no way an "abuse of discretion."

Mastercard is disappointed with the district court's decision, but the action is proceeding apace in the lower court, and Mastercard demonstrates no "compelling need" for an immediate appeal, given that such review "should be an avenue of last resort." *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *2 (11th Cir. June 29, 2018) (denying Rule 23(f) petition in TCPA case) (quoting *Shin v. Cobb Cty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001)).

<u>**Factual and Procedural Background**</u>

**A.    The junk-fax campaign for the Doctors Club Mastercard giving rise to this case.**

Beginning in November 2014, Dr. Kianor Shahmohammadi ("Dr. Shah") inquired with Mastercard about entering into a "co-brand" agreement for a credit card targeted to doctors, through a company he set up called Peer Equities, LLC. (Doc. 178, Pls.' Second Amended Mot. Class Certification at 7). Mastercard agreed to the partnership, and in August 2015, Mastercard and Peer Equities entered into a Co-Brand Agreement, which provided a budget of $200,000 for marketing the "Doctors Club Mastercard." (*Id.* at 8). Peer Equities contracted with First Arkansas Bank to issue the Doctors Club Mastercard. (*Id.*)

One of the ways Dr. Shah proposed to market the new Doctors Club Mastercard was to send approximately one million fax advertisements in two sets of broadcasts to a list of approximately 500,000 fax numbers that he purchased from a company called "CarePrecise," using the marketing budget from the Mastercard co-brand agreement. (*Id.* at 9). Dr. Shah hired a fax broadcaster called "jBlast" to physically transmit the faxes. (*Id.* at 10).

On December 12, 2015, Dr. Shah sent an email to his contacts at Mastercard and First Arkansas informing them he planned to send "500K unique faxes going out next week before Christmas," and attached a "call script" to be used in voice telemarketing phone calls. (*Id.* at 8). Dr. Shah's contact at Mastercard responded to

his contact at First Arkansas, but not to Dr. Shah, stating, "Really . . .? We should talk. Glad to help with MC materials, but this is bad. The fax was even worse. Let's talk next week. Not that we have any say but I wouldn't think this is an effective way to get card holders. Let me know if you want my help." (*Id.* at 8–9).

On December 14, 2015, jBlast sent Dr. Shah an invoice for the upcoming fax broadcasts in the amount of $10,000 for "1,000,000 Delivered Faxes" regarding the "MasterCard Doctors Club Holiday and New Year Campaign," with 500,000 faxes to be sent "during Christmas" and another 500,000 faxes to be sent "after the New Year." (*Id.* at 10). Dr. Shah paid the jBlast invoice and submitted the invoice to Mastercard for reimbursement, which was later approved by Mastercard, in accordance with the Co-Brand Agreement, stating "[t]his week, we are running 500,000 faxes," in addition to email and telemarketing efforts. (*Id.*)

The same day, December 14, 2015, Dr. Shah sent an email to another of his contacts at Mastercard, stating that "[t]his week, we are running 500,000 faxes" to promote the Doctors Club Mastercard. (*Id.* at 9). Dr. Shah stated that he was attaching an invoice for jBlast's faxing services and that he had already paid "the Faxing company" half of the invoiced amount, $5,000, out of the marketing budget "or they would not start this week." (*Id.*)

On December 17, 2015, Dr. Shah sent Mastercard an email stating, "Fax to 500,000 Healthcare practices (All Medical/Dental/Optometry/Pharmacy/Audiology

3

/Podiatry/Chiropractic/ Nursing/PA (and all subspecialties) set to go out tonight (Christmas Edition)" and "[a]nother 500,000 Faxes to go out for New Years." (*Id.*) Mastercard's representative responded, "Great. Any new Apps?," meaning any new card applications. (*Id.*) Dr. Shah responded, "I will share the faxes with you set to go out tonight and pass their compliance department. This is the latest draft that is being a bit modified by design right now as we speak. Said to go out tonight. This is our first large campaign." (*Id.*)

On December 18, 2015, jBlast transmitted the first round of Doctors Club faxes. (*Id.*) Shortly thereafter, a fax recipient who found Dr. Shah "on the internet" called Dr. Shah on the phone to complain, stating that "[s]he wanted to opt out" of future faxes, but there was no "opt-out notice" on the fax by which to do so. (*Id.*) Dr. Shah then added an opt-out notice to the fax, and instructed jBlast to send the remaining faxes on December 22–23, 2015. (*Id.*)

On January 7, 2016, Plaintiff Mussat filed the first putative class action arising out of the Doctors Club Mastercard faxes under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C), *Florence Mussat, M.D., S.C. v. Kianor Shahmohammadi, et al.*, No. 16-cv-00171 (N.D. Ill.). Plaintiffs Scoma and Gress subsequently filed their own putative TCPA class actions, and all three cases were eventually consolidated in the Middle District of Florida in this action.

**B.      Mastercard's defense that it is not the "Sender" of the faxes.**

Mastercard sought to dismiss this case for failure to state a claim on the basis that it was not even plausibly the "sender" of the Doctors Club faxes, defined by FCC regulations, 47 C.F.R. § 64.1200(f)(11), as the "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." (Doc. 65 at 4). Mastercard argued that it had not "prepared, sent, or authorized" the Doctors Club faxes and imposing liability on it would be "absurd." (*Id.* at 6).

The district court (Steele, J.) denied the motion to dismiss, ruling that Plaintiffs adequate alleged "sender" liability under the "strict liability" regulatory definition. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 232 F. Supp. 3d 1201, 1205 (M.D. Fla. 2017). In its Answer to the operative Complaint, the assertion that the faxes were not sent on Mastercard's "behalf" underlies at least five of Mastercard's affirmative defenses. (Doc. 87, Answer to Third Am. Compl., Aff. Defenses Nos. 5–6, 11–13).

**C.      The district court's order certifying the Stand-Alone Fax Machine Class.**

After the magistrate judge's recommendation that Plaintiff's First Amended Motion for Class Certification be denied on "ascertainability" grounds was vacated by the district court (*see* Doc. 176, Order) in light of *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021), Plaintiffs filed their Second Amended Motion for

Class Certification. (Doc. 178). In the Second Amended Motion, Plaintiffs argued the district court should certify an All Fax Recipients Class, notwithstanding a ruling issued in December 2019 by the Consumer & Governmental Affairs Bureau of the Federal Communications Commission ("FCC") in *In re Amerifactors Fin. Group, LLC Pet.*, 2019 WL 6712128 (CGAB Dec. 9, 2019) ("Amerifactors Bureau Ruling"), stating that an "online fax service" is not a "telephone facsimile machine" under the TCPA. (*Id.* at 26).

Plaintiffs argued that the Amerifactors Bureau Ruling did not require the exclusion of "online fax service" users, noting the ruling is contrary to the "plain language" of the statutory definition of "telephone facsimile machine" in 47 U.S.C. § 227(a)(3), which "encompasses more than a traditional fax machine," as the Sixth Circuit held in *Lyngaas v. Curaden AG*, 992 F.3d 412, 427 (6th Cir. 2021). (Doc. 178 at 26). Plaintiffs argued that point was reinforced by the FCC's prior interpretations stating that the TCPA covers faxes received by the end-user on a computer. (*Id.* (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (July 3, 2003) ("2003 Commission Order"); *In re WestFax, Inc. Petition*, 30 FCC Rcd. 8620 (Aug. 28, 2015) ("WestFax Bureau Ruling")); *see also Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, 2021 WL 3043422, at *1 (N.D. Ill. Feb. 17, 2021) (holding that the Amerifactors Bureau Ruling "flies in the face of years of precedent, established by

the FCC . . . that the TCPA covers faxes sent to computers in addition to traditional fax machines").

In the alternative, Plaintiffs argued that, if the district court determined that it must distinguish between users of stand-alone fax machines and users of "online fax services" under the Amerifactors Bureau Ruling, the court should certify a separate Stand-Alone Fax Machine Class and Online Fax Services Class. (*Id.* at 5). Plaintiffs explained that they could, through a three-step subpoena process, identify the carrier of each of the subject fax numbers and subpoena the carrier to identify which numbers the carrier was providing "online fax services" on the date in question. (*Id.* at 30–31).

On December 23, 2021, the district court issued its order on Plaintiffs' Second Amended Motion. (*See* Doc. 188 ("Certification Order")). The district court denied Plaintiffs' request to certify the All Fax Recipients Class or the Online Fax Services Class, agreeing with Mastercard that the Amerifactors Bureau Ruling was entitled to deference. (Certification Order at 15). The district court held Rule 23(b)(3) predominance was not satisfied with respect to the All Fax Recipients Class or the Online Fax Services Class because "although there may be circumstances where an individual who received a fax via an online fax service suffered an injury in fact, the Court would be required to determine on an individual basis whether each member read the fax, the time spent reviewing the

7

fax, whether the fax was printed, or whether the member followed up on the fax."
(*Id.* at 11). The district court concluded that "the question of standing would
predominate over the common issues" as to the All Fax Recipients Class and the
Online Fax Services Class, and, therefore, "the classes cannot be certified." (*Id.*)

However, the district court held it was appropriate to certify a Stand-Alone
Fax Machine Class, holding that the Article III standing of users of stand-alone fax
machines is "not at issue." (*Id.* at 9); *see also Palm Beach Golf Ctr.-Boca, Inc. v.
John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015). The district
court carefully considered Mastercard's objections to predominance as to the
Stand-Alone Fax Machine Class and rejected them. (Certification Order at 25–27).
The district court held that "[t]he overriding common question, which can be
decided classwide, is whether Mastercard sent the faxes as prohibited by the
TCPA," along with numerous other issues, such as whether the fax is an
"advertisement" or contained a compliant opt-out notice. (*Id.* at 25).

In accordance with *Cherry*, 986 F.3d at 1302–04, the district court
performed a separate "comparative" balancing test to determine whether the
"administrative feasibility" aspect of the "manageability" consideration of Rule
23(b)(3)(D) superiority was satisfied, concluding that "[a]t the very least,"
Plaintiffs' proposed subpoena process is "'a starting point from which' Plaintiffs
can use other methods if necessary, such as 'self-identifying affidavits and

subpoenas.'" (Certification Order at 24 (quoting *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018); *Chicago Car Care Inc. v. A.R.R. Enter., Inc.*, No. 19-cv-07687, 2021 WL 1172262, at *6 (N.D. Ill. Mar. 29, 2021) (finding no "complex individualized inquiries are needed to determine whether or not class members used online fax services," and that "[o]ne option is to just ask, using affidavit-based proof")). The district court concluded that "any manageability concerns here are insufficient to render class certification inappropriate, since all other factors militate in favor of certification." (*Id.* (citing *Cherry*, 986 F.3d at 1305 (noting that "[a]dministrative feasibility alone will rarely, if ever, be dispositive")). And the district court noted that it always retains the "discretion to decertify a certified class that turns out to be unmanageable." (*Id.*)

After its motion for reconsideration was denied on February 9, 2022 (Doc. 197), Mastercard filed its Petition for permission to appeal certification of the Stand-Alone Fax Machine Class, solely challenging the district court's finding that common issues "predominate" over individual issues as to the Stand-Alone Fax Machine Class. (Pet. at 1–27). For the reasons below, Mastercard falls short of the standards for interlocutory appeal, and the petition should be denied.

<u>**Argument**</u>

**I.      Standards for obtaining interlocutory review of class certification.**

Interlocutory appeals under Rule 23(f) are "generally disfavored" in this Circuit. *Prado-Steiman ex rel Prado. v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000). The petitioner must show a "compelling need for resolution of the legal issue sooner rather than later." *Id.* at 1274. To discourage the "flood" of petitions that would otherwise ensue, the Court will "err, if at all, on the side of allowing the district court an opportunity to fine-tune its class certification order rather than opening the door too widely to interlocutory appellate review." *Id.* Since class certification is always reviewable following final judgment, interlocutory review of class certification "should be an avenue of last resort." *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001).

Against this background, this Court has identified five factors in considering whether to grant interlocutory review of an order granting or denying class certification: (1) whether the order is the "death knell" of the litigation, (2) whether the petitioner identifies a "substantial weakness" in the order such that it "likely constitutes an abuse of discretion," (3) whether the appeal presents an "unsettled legal issue" important to class-action litigation in general, (4) whether the "nature and status" of the litigation support review, and (5) whether likely "future events"

support immediate appeal. *Prado-Steiman*, 221 F.3d at 1274–76. The "death-knell" factor is the "most important" consideration in the analysis. *Id.* at 1274.

## II. Mastercard fails to meet the standards for immediate Rule 23(f) review.

Mastercard does not meet any of the five factors for interlocutory appeal of a class-certification order. Mastercard does not contend that it satisfies factors (4) and (5) articulated in *Prado-Steiman*, 221 F.3d at 1274–76. (*See* Pet. at 16 (omitting these factors from "Standard of Review")).

### A. Mastercard fails to establish the "death knell" factor.

The "most important" factor in deciding a Rule 23(f) petition is whether the class-certification decision "effectively prevents the petitioner from pursuing the litigation." *Prado-Steinman*, 221 F.3d at 1274. For a defendant seeking review of an order granting class certification, this means that certification "raises the cost and stakes of the litigation so substantially that a rational defendant would feel irresistible pressure to settle." *Id.* The defendant must provide "record evidence regarding the financial resources of the parties," as compared to the "the amount of money potentially recoverable" if the class prevails. *Id.* A defendant must "prove that they'll be forced to settle unless we reverse the class certification order" to satisfy this factor. *Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 491 (7th Cir. 2014) (Posner, J.).

Mastercard does not claim that the amount of money potentially recoverable by the Stand-Alone Fax Machine Class is so large that it will face irresistible pressure to settle. (Pet. at 25–27). On the contrary, Mastercard states that it is confident it will prevail on the merits on the "sender" element and avoid any liability to the class whatsoever, given its claimed "complete lack of involvement in planning, creating or sending the Fax." (*Id.* at 25). As far as its petition reveals, Mastercard believes it faces zero risk of an adverse final judgment in this litigation, whether a class is certified or not. (*Id.*) Since Mastercard's position is that its potential liability is the same after class certification as it was before class certification (*i.e.*, $0.00), the death-knell factor cannot possibly be satisfied.

Rather than try to demonstrate that the specter of a classwide judgment will force it to settle, Mastercard employs a sleight of hand, changing the standard from class certification being the "death-knell" of the litigation to class certification causing "significant prejudice" to the defendant. (Pet. at 17). Under Mastercard's proposed standard, a defendant seeking interlocutory review of an order granting class certification need only show that the defendant "would have to expend substantial resources to vindicate itself" on the merits. (*Id.*; *see also id.* at 25–26 (arguing the death-knell factor is met because Mastercard will be required to "incur enormous expense" and "spend[] a fortune to vindicate itself")).

The problem with Mastercard's "significant prejudice" standard is that it will be met in nearly every class action. It is difficult to conceive of a class action in which the defendant can vindicate itself on the merits after failing to secure a dismissal at the pleading stage without being required to "expend substantial resources." The Court should reject Mastercard's attempt to substitute a "significant prejudice" test for the death-knell factor and find that Mastercard's petition fails to satisfy the death-knell factor.

Even if the Court attempts *sua sponte* to compare "the financial resources of the parties" to "the amount of money potentially recoverable," *Prado-Steinman*, 221 F.3d at 1274, Mastercard's petition should be denied. Mastercard fails to point to record evidence regarding its financial resources, and the Court can deny the petition on that basis alone. *See Chapman*, 747 F.3d at 491 (denying review in TCPA fax case, where "the defendants haven't told us what their assets are," and so the petition did not even merit "careful consideration"). Nevertheless, public filings reveal that Defendant's parent company, Mastercard Inc., had net income in 2021 of $8.68 billion[1] and is holding $7.9 billion in cash on hand.[2] In light of

---

[1] *See* Mastercard, Inc. 2021 Form 10-K (Feb. 11, 2022) at 45 (Financial Results Overview), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1141391/000114139122000023/ma20211231.htm#ifc9293bf99c744279400f5fac9866383_28.

[2] *Id.* at 54.

Mastercard's massive financial resources, the death-knell factor is not met, where the 381,011 successful fax transmissions at issue here translate to, at most, statutory damages of $190.5 million (at $500 per fax) to $571.5 million (at $1,500 per fax, if the violations are found to be "willful or knowing"). *See* 47 U.S.C. § 227(b)(3); *see also In re Delta Air Lines*, 310 F.3d 953, 961 (6th Cir. 2002) (finding death-knell factor not satisfied where defendant faced $1 billion in damages, holding "what might be 'ruinous' to a company of modest size might be merely unpleasant to a behemoth") (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000)).

Mastercard is a "behemoth," like the defendant in *In re Delta Air Lines*. It can easily afford to litigate this case to a final judgment and then, if it loses on the merits, appeal class certification along with any other issues it has properly preserved. Mastercard therefore fails the "most important" of the five factors for interlocutory review, and the petition can and should be denied on this basis alone. *See, e.g.*, *Chapman*, 747 F.3d at 491.

> **B.    Mastercard fails to demonstrate any "substantial weakness" in the district court's decision, such that it "likely constitutes an abuse of discretion."**

Mastercard concedes nearly all the Rule 23 elements for class certification are met. (Pet. at 1–27). Mastercard does not challenge Rule 23(a) numerosity, commonality, typicality, or adequacy of representation. (*Id.*) Nor does Mastercard

dispute that the Stand-Alone Fax Machine Class is "ascertainable" under the

traditional objective-criteria standard adopted in *Cherry*, 986 F.3d at 1304, or that

class certification is "superior" to the alternatives under Rule 23(b)(3), including

the "manageability" aspect of Rule 23(b)(3)(D). (*Id.*) Mastercard's sole challenge

is to the district court's finding that common issues "predominate" over individual

issues under Rule 23(b)(3) with respect to the Stand-Alone Fax Machine Class.

(*Id.*) Mastercard is mistaken.

First, Mastercard completely ignores the district court's reasoning that "[t]he

overriding common question, which can be decided classwide, is whether

Mastercard sent the faxes as prohibited by the TCPA. 47 U.S.C. § 227(b)(1)(C)."

(Certification Order at 25; Pet at 1–27 (not mentioning this ruling once)). The

"sender" issue was the basis for Mastercard's motion to dismiss, *see Scoma*

*Chiropractic, P.A. v. Dental Equities, LLC*, 232 F. Supp. 3d 1201 (M.D. Fla.

2017), and it forms the backbone of at least five of Mastercard's affirmative

defenses. (*See* Doc. 87, Answer to Third Am. Compl., Aff. Defenses Nos. 5–6, 11–

13). Mastercard's failure to grapple with the core ruling of the Order it is asking

this Court to review reveals that it cannot make a "compelling" showing of a

"likely" abuse of discretion.[3] *Prado-Steiman*, 221 F.3d at 1274.

---

[3] Mastercard also ignores the district court's finding (Certification Order at 26) that "[a]dditional common questions" include "whether the faxes are 'advertisements,' whether they satisfy the TCPA's notice requirements, and whether they were sent

Even in its petition seeking review of class certification, Mastercard cannot help but argue the merits of the "sender" issue, asserting that it will ultimately be "vindicated" on the merits due to its "lack of involvement in planning, creating or sending the Fax." (Pet. at 25). Of course, Mastercard ignores (a) that Dr. Shah forwarded the Fax to Mastercard before it was transmitted; (b) that Dr. Shah advised Mastercard's representative that he was going to transmit the Fax to one million fax numbers, and the response was, "Great. Any new Apps?"; and (c) that Mastercard ratified Dr. Shah's actions by reimbursing it for the fax campaign. But that is the dispute to be decided on the merits, and Mastercard's petition offers no reason why it should not be decided in one fell swoop as to all class members.

Second, Mastercard's petition hinges on the notion that the district court "erred in importing *Cherry's* holding regarding the effect of administrative feasibility on ascertainability analysis into consideration of whether individual issues predominate over common issues." (Pet. at 19–20). The district court did no such thing, and Mastercard misunderstands *Cherry*, which did not hold anything with respect to "the effect of administrative feasibility on [the] ascertainability analysis."

---

using a 'telephone facsimile machine, computer, or other device,'" and its ruling that the TCPA's "straighforward" statutory damages weighed in favor of a finding of predominance. (*See* Pet. at 1–27 (not mentioning these common issues)).

In *Cherry*, this Court held that administrative feasibility "is not an inherent aspect of ascertainability" *at all*, because the ascertainability analysis is limited to considering whether the class is "adequately defined" by objective criteria. *Cherry*, 986 F.3d at 1301. The Court held that administrative feasibility is also "entirely unrelated to either Rule 23(a) or (b)," which of course includes Rule 23(b)(3) "predominance." *Id.* Rather, *Cherry* held that the administrative feasibility of identifying class members is considered *solely* in "its limited relevance to Rule 23(b)(3)(D)" manageability. *Id.* at 1304. Here, Mastercard's petition does not dispute that Rule 23(b)(3) "superiority," including Rule 23(b)(3)(D) manageability, is satisfied (Pet. at 1–27), so there is no arguable inconsistency with *Cherry*.

In sum, Mastercard's claimed "substantial weakness" in the district court's predominance analysis fails to grapple with the actual rationale of the district court's decision, misunderstands *Cherry*, and fails to carry Mastercard's burden to justify this Court's immediate review of class certification.

## C. Mastercard presents no novel or unsettled legal issue important to class actions in general.

Mastercard's petition does not identify any "novel or unsettled" issue of law that is important to class litigation. (Pet. at 1-27). To be sure, it was "unsettled" in this Circuit for years how the administrative feasibility of identifying class members should be analyzed in deciding whether to certify a class. But this Court provided a clear answer to that question in *Cherry*, holding that administrative

feasibility has nothing to do with whether the class definition is "ascertainable" and is "entirely unrelated to either Rule 23(a) or (b)," *except* as to "its limited relevance to Rule 23(b)(3)(D)" manageability. 986 F.3d at 1304. All the district court did in this case was apply that rule. (Certification Order at 22–25). Mastercard disagrees with *how* the district court applied the rule, but it identifies no "novel or unsettled" question of class-action practice for this Court to decide.

Even if Mastercard had tried to point to some novel or unsettled question of law for this Court to resolve, this Court holds that it is "relatively easy" to frame an issue as "novel or unsettled," but "[t]o justify immediate and interlocutory appellate review, something more is necessary—something that creates a compelling need for resolution of the legal issue sooner rather than later." *Prado-Steiman*, 221 F.3d at 1274. Mastercard fails to establish any compelling need for immediate review in this case, and the Court should deny the petition.

### D. The nature and status of the litigation before the district court supports denial of the petition.

Mastercard does not mention the fourth factor identified in *Prado-Steiman*, 221 F.3d at 1276, whether the "nature and status" of the litigation support interlocutory review. (Pet. at 1–27). The nature and status of the litigation weighs heavily against granting Mastercard's petition, where the action is progressing under the district court's watch, and where Mastercard can appeal the portion of

the order certifying the Stand-Alone Fax Machine Class following a final judgment, should such a judgment ultimately be entered against it.

In fact, there will likely be an appeal (and a cross-appeal) from a final judgment in this case no matter who prevails on the merits. There are two likely outcomes:

(1) the district court enters a judgment on the merits that Mastercard is liable to the Stand-Alone Fax Machine Class as the "sender" of the Doctors Club faxes, in which case (a) Mastercard will appeal both the merits ruling that it is the "sender," as well as class certification of the Stand-Alone Fax Machine Class; and (b) Plaintiffs will cross-appeal the district court's denial of class certification as to the All Fax Recipients Class and Online Fax Services Class; or

(2) the district court enters a judgment on the merits that Mastercard is *not* liable as the "sender" as to the Stand-Alone Fax Machine Class, in which case (a) Plaintiffs will appeal the merits ruling that Mastercard is not the "sender," along with the denial of certification of the All Fax Recipients Class and Online Fax Services Class; and (b) Mastercard will cross-appeal the grant of class certification as to the Stand-Alone Fax Machine Class.

Either way, the class-certification issue is likely to come before this Court following a final judgment, so interlocutory review is not warranted, since it is reserved as "an avenue of last resort." *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d

1061, 1064 (11th Cir. 2001). The fourth *Prado-Steiman* factor, the "nature and status" of the litigation, weighs against granting interlocutory review, and the Court should deny Mastercard's petition.

### E. Likely "future events" do not support an interlocutory appeal.

Mastercard does not mention the fifth factor identified in *Prado-Steiman*, 221 F.3d at 1276, whether likely "future events" support immediate appeal. (Pet. at 1–27). Here, the likely "future events" weigh against interlocutory review and in favor of allowing the district court to continue it management of this action. The district court is well aware that it retains the "discretion to decertify a certified class that turns out to be unmanageable." (Certification Order at 25). Mastercard has not demonstrated (or claimed) that likely future events support interlocutory review, and the petition should be denied.

### Conclusion

Mastercard has not established the necessary factors to warrant interlocutory review of the district court's class-certification order. Therefore, its petition should be denied.

March 7, 2022

/s/ Glenn L. Hara
Glenn L. Hara
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500

*Attorney for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE
## WITH LENGTH LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This Answer to Defendant's Petition complies with the length limitation of Fed. R. App. P. 5(c) because it does not exceed 5200 words, excluding the disclosure statement, certificate of service, table of contents and authorities, with one-inch margins on all sides.

2.      This Answer to Defendant's Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced type in 14-point Times New Roman.

March 7, 2022

/s/ Glenn L. Hara
Glenn L. Hara
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Telephone:  847-368-1500

*Attorney for Plaintiffs-Respondents*

## Certificate of Service

I certify that a true and correct copy of Plaintiffs-Respondents Answer to Defendant's Rule 23(f) Petition for Permission to Appeal from an Order on Class Certification was filed via the Court's electronic filing system and served by U.S. mail and via e-mail transmission to the following counsel of record on March 7, 2022:

Kyle Dudek
Henderson, Franklin, Starnes & Holt, P.A.
1715 Monroe Street
Fort Myers, FL 33901
kyle.dudek@henlaw.com

Christopher G. Karagheuzoff
Jonathan Montcalm
Dorsey & Whitney LLP
51 W. 52nd Street
New York, NY 10019
karagheuzoff.christopher@dorsey.com
montcalm.jonathan@dorsey.com

/s/ Glenn L. Hara
Glenn L. Hara